UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

AMY J. MEYER,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:15-cv-207
Barrett, J.
Litkovitz, M.J.

REPORT AND
RECOMMENDATION

    Plaintiff Amy J. Meyer brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for disability insurance benefits (DIB) and granting her application for supplemental security income (SSI) for the period beginning March 1, 2012. This matter is before the Court on plaintiff's Statement of Errors (Doc. 9), the Commissioner's response (Doc. 17), and plaintiff's reply (Doc. 19). This matter is also before the Court on the Commissioner's motion for voluntary remand (Doc. 14) and plaintiff's response in opposition (Doc. 15).

**I. Procedural Background of Administrative Proceedings**

    Plaintiff filed her applications for DIB and SSI in September 2011, alleging disability since June 15, 2006, due to depression and panic attacks. After initial administrative denials of her claims, a hearing was held before administrative law judge (ALJ) Gregory G. Kenyon on April 5, 2013. On July 11, 2013, the ALJ issued a decision denying plaintiff's DIB application, finding she was not under a disability at any time through December 31, 2011, the date last

insured. The ALJ found plaintiff became disabled on March 1, 2012, for purposes of her SSI application, but that she was not disabled at any time prior to that date.

Specifically, the ALJ determined that plaintiff met Listing 12.06 for anxiety-related disorders as of March 1, 2012. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.06. The ALJ found that the "Paragraph A" criteria of Listing 12.06 were satisfied as of March 1, 2012, because plaintiff suffered from "recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, tremor, [and] sense of impending doom occurring on the average of at least once a week." (Tr. 70). During such panic attacks, plaintiff "experiences a choking sensation and often vomits." (*Id.*). In addition, plaintiff has developed an apprehension over taking pills and eating due to a fear of choking, with the attacks triggered by agoraphobic anxiety and also occurring in private. (*Id.*). The ALJ found that the "Paragraph B" criteria were satisfied because plaintiff experienced mild restriction in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; and one to two episodes of decompensation, each of extended duration. (*Id*). In support of his finding that plaintiff met Listing 12.06 as of March 1, 2012, but not before, the ALJ determined that plaintiff's allegations regarding her symptoms and limitations were credible for that period because there was "much more evidence from mental health treatment providers" in the records beginning that date, including records of specialized treatment, and "assessments from several mental health specialists who espouse[d] disabling restrictions" for plaintiff. (Tr. 71, citing Tr. 434-52, 453-71).

Plaintiff appealed the ALJ's decision to deny benefits prior to March 1, 2012 to the Appeals Council. In connection with the appeal, plaintiff presented reports from her treating psychologist and treating internist. Dr. John Scudder, Ed.D., reported that plaintiff's mental

2

health status and limitations on October 17, 2011, the date of his first examination, were the same as her condition in March 2012, when he completed a mental residual functional capacity form and listings questionnaire. (Tr. 482-483). Dr. Scudder stated that in his view, plaintiff's mental health condition "was already disabling when she first came to see [him] in October 2011." (Tr. 482). Dr. Joseph Hammad, M.D., reported that plaintiff's anxiety disorder was work prohibitive since at least her visit with him on September 13, 2011. (Tr. 484). Although the Appeals Council accepted and considered this additional evidence, it nonetheless denied plaintiff's request for review, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

    1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

    2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### III. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] met the insured status requirements of the Social Security Act through December 31, 2011.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571, *et seq.*, and 416.971, *et seq.*).
>
> 3. Since the alleged onset date of disability, June 15, 2006, the [plaintiff] has had the following severe impairments: Anxiety disorder, depression and a history of alcohol abuse (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. Prior to March 1, 2012, the date the [plaintiff] became disabled, the [plaintiff] did not have an impairment or combination of impairments that meets or

medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that prior to March 1, 2012, the date the [plaintiff] became disabled, the [plaintiff] had the residual functional capacity [("RFC")] to perform a full range of work at all exertional levels but with the following nonexertional limitations: She could not have climbed ladders, ropes or scaffolds. She could not have worked around hazards, such as unprotected heights or dangerous machinery. She would have been limited to performing unskilled, simple, repetitive tasks. She could have had occasional contact with co-workers, supervisors, and the public. She could have performed no rapid production pace work or jobs involving strict production quotas. She would have been limited to performing jobs in a relatively static work environment in which there is very little change in the work routine from one day to the next.

6. Since June 15, 2006, the [plaintiff] has been unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[1]

7. Prior to the established disability onset date, the [plaintiff] was an individual closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Prior to March 1, 2012, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled" whether or not the [plaintiff] has transferable job skills (See SSR 82-41and 20 CFR Part 404, Subpart P, Appendix 2).

10. Prior to March 1, 2012, considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the [plaintiff] could have performed (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).[2]

---

[1] Plaintiff's past relevant work was as a sales representative, which is a light exertion, skilled position. (Tr. 44).

[2] The ALJ relied on the VE's testimony to find that prior to March 1, 2012, plaintiff would be able to perform the requirements of representative occupations such as folding machine operator (1,200 jobs locally, 60,000 jobs nationally), routing clerk (2,000 jobs locally, 100,000 jobs nationally), and cleaner (1,500 jobs locally, 100,000 jobs nationally). (Tr. 45, 69-70).

11. Beginning on March 1, 2012, the severity of the [plaintiff]'s impairments has met the criteria of section 12.06 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 416.920(d) and 416.925).

12. The [plaintiff] was not disabled prior to March 1, 2012, (20 CFR 404.1520(g) and 416.920(g)) but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(d) and 416.920(d)).

13. The [plaintiff] was not under a disability within the meaning of the Social Security Act at any time through December 31, 2011, the date last insured (20 CFR 404.315(a) and 404.320(b)).

(Tr. 61-72).

## IV. Procedural History of District Court Proceedings

Plaintiff filed this appeal alleging two assignments of error: (1) the ALJ erred by failing to properly weigh the opinions of her treating sources and by determining a disability onset date that is not supported by substantial evidence; and (2) the Appeals Council abdicated its responsibility to conduct a fair and complete review of the ALJ's decision. (Docs. 9, 17). Plaintiff requests that the Court reverse and remand for an immediate award of benefits as of plaintiff's amended alleged onset date of September 13, 2011. In the alternative, plaintiff requests a remand for the consideration of new and material evidence under Sentence Six of 42 U.S.C. § 405(g) in the event the Court finds that a reversal and remand for an immediate award of benefits under Sentence Four of § 405(g) is not warranted. (Doc. 9 at 17).

In response to the Statement of Errors, the Commissioner filed a motion for voluntary remand of this matter on September 9, 2015. (Doc. 14). The Commissioner concedes that the ALJ's decision finding that plaintiff's disability began on March 1, 2012, and awarding SSI as of that date, is not supported by substantial evidence. The Commissioner moves the Court to remand the case for a determination by the ALJ as to whether the evidence supports a disability onset date

of September 12, 2011. (*Id.*). Plaintiff filed a response opposing defendant's motion. (Doc. 15). Plaintiff contends that a remand for further consideration of the disability onset date is not warranted because the proof of disability prior to the date her insured status lapsed is overwhelming. Plaintiff seeks a reversal and remand for an immediate award of benefits based on a disability onset date of September 13, 2011, the date she agreed with her primary care physician to begin treatment with a mental health specialist. (*Id.* at 1, 5). In light of plaintiff's opposition to the motion, and in the interest of judicial economy, the Court stayed its ruling on the Commissioner's motion for voluntary remand and ordered the Commissioner to file a response on the merits to plaintiff's statement of errors. (Doc. 16).

The Commissioner filed a response on March 1, 2016. (Doc. 18). The Commissioner acknowledges that the Court stayed the motion for voluntary remand and "direct[ed] the Commissioner to file a response brief *on the merits* of the ALJ's decision. (Dkt. #16)." (*Id.* at 1-2) (emphasis added). However, instead of complying with the Court's order to address the merits of the ALJ's decision setting the onset date of disability as March 1, 2012, the Commissioner filed a response asserting she does not agree that the response ordered by the Court is "appropriate here." (*Id.* at 2). The Commissioner concedes that the ALJ's decision is not supported by substantial evidence and should be reversed. The Commissioner states that the only issue presented is whether this case should be reversed and remanded for an award of benefits or reversed and remanded for further administrative proceedings. The Commissioner contends that the latter course is appropriate because although additional medical evidence plaintiff submitted to the Appeals Council arguably provides proof of disability beginning sometime in 2011, this evidence alone is inadequate to firmly establish an earlier disability onset date. (Doc. 18). The Commissioner's response fails to address whether the record before the ALJ establishes a disability onset date of

September 13, 2011, which is the essence of plaintiff's appeal to this Court.

In reply, plaintiff acknowledges that the only question remaining is whether this case should be reversed and remanded for an award of benefits or reversed and remanded for further administrative proceedings. (Doc. 19 at 3). Plaintiff alleges that evidence submitted to the Appeals Council after the ALJ hearing establishes that she became disabled no later than September 13, 2011. (Doc. 19 at 5).

### V. This matter should be reversed and remanded for an immediate award of benefits as of September 13, 2011.

As indicated, the Commissioner concedes that the ALJ's decision setting the onset date of disability as March 1, 2012, is not supported by substantial evidence. Therefore, the only issue in this case is whether this matter should be reversed and remanded for an outright award of benefits or for further administrative proceedings.

In a case where the final decision of the Commissioner is not supported by substantial evidence, the Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991). Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec. of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Sec. of H.H.S.*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176; *see also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994).

While the parties agree that substantial evidence does not support the ALJ's finding that

8

plaintiff's disability had its onset on March 1, 2012, they disagree on whether this matter should be remanded for further administrative proceedings. Plaintiff requests a reversal and remand for an immediate award of benefits, alleging that the evidence establishes a disability onset date of September 13, 2011.[3] Plaintiff argues that the evidence supports a disability onset date that coincides with that time frame. Plaintiff alleges that in finding that the disability onset date was March 1, 2012, the ALJ incorrectly weighed the medical opinion evidence and failed to properly apply Social Security Ruling 83-20 (SSR 83-20), 1983 WL 31249 (1983), to infer the correct onset date from the medical and other evidence that consistently describes the history and symptomatology of her mental disease process. (Docs. 9, 15). The Commissioner contends that an onset date cannot be determined based on the evidence before the Court.

Contrary to the Commissioner's position, proof of disability beginning September 13, 2011, the onset date alleged by plaintiff, is overwhelming and the evidence to the contrary is lacking in substance. The overwhelming weight of the medical evidence, plaintiff's work history, plaintiff's consistent reports of her symptoms, and the third-party reports credited by the ALJ reasonably permit only one conclusion: plaintiff's disability had its onset no later than September 13, 2011, following plaintiff's traumatic and unsuccessful attempt to return to work.

The Court's analysis in determining whether the record adequately establishes plaintiff's entitlement to benefits with an onset date of disability of September 13, 2011, *Faucher,* 17 F.3d at 176, is guided by SSR 83-20. SSR 83-20 sets forth the following analysis for cases of disability of non-traumatic origin:

> 1. *Applicant Allegations*: The starting point in determining the date of onset of disability is the individual's statement as to when disability began. . . .

---

[3] Plaintiff acknowledges that she initially alleged an onset date of June 15, 2006, the date she lost her job of 19 years, when she submitted her applications for disability benefits. (Doc. 9 at 13, n.2). Plaintiff notes, however, that she did not seek treatment from a mental health provider until after she experienced a significant worsening of her symptoms in September 2011, following her unsuccessful attempt to return to work. (*Id.*).

9

> 2. *Work History*: The day the impairment caused the individual to stop work is frequently of great significance in selecting the proper onset date. . . .
>
> 3. *Medical and Other Evidence*: Medical reports containing descriptions of examinations or treatment of the individual are basic to the determination of the onset of disability. The medical evidence serves as the primary element in the onset determination. Reports from all medical sources (e.g., physicians, hospitals, and government agencies) which bear upon the onset date should be obtained to assist in determining when the impairment(s) became disabling.
>
> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.
>
> Particularly in the case of slowly progressive impairments, it is not necessary for an impairment to have reached listing severity (i.e., be decided on medical grounds alone) before onset can be established. In such cases, consideration of vocational factors can contribute to the determination of when the disability began. . . .
>
> In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. When the medical or work evidence is not consistent with the allegation, additional development may be needed to reconcile the discrepancy. However, the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record.

SSR 83-20, 1983 WL 31249, at *2-3 (1983); *see also Dennis v. Astrue*, 655 F. Supp.2d 746, 752-53 (W.D. Ky. 2009).

SSR 83-20 directs that the starting point for ascertaining the onset date for a disability of non-traumatic origin is the date alleged by the plaintiff. Here, plaintiff alleges that her disability had its onset no later than September 13, 2011, the date Dr. Hamad's notes reflect plaintiff's unsuccessful work attempt due to panic attacks and anxiety. (Tr. 395). Plaintiff attempted to return to work in September 2011 as a deli worker at a grocery store, but she was let go due to her panic attacks. (Tr. 71, citing Tr. 454- "Client attempted to return to work in 2011, but her choking panic

10

attacks prevented her from performing job duties at Kroger."). One week after this visit, Dr. Hamad, plaintiff's long-time treating internist who had been treating her for panic attacks and anxiety, referred plaintiff to a mental health specialist. (Tr. 398). Plaintiff then began treating with Dr. Scudder the following month. (Tr. 404-05). Plaintiff's consistent reports of debilitating symptoms after this unsuccessful work attempt, as well as the medical and other evidence of record, strongly support an onset date of disability of September 13, 2011.

The record shows that plaintiff consistently complained of panic attacks and anxiety symptoms which had become debilitating by the time she unsuccessfully attempted to return to work in September 2011. In a function report she completed on October 26, 2011, plaintiff reported that her activities had changed because of "choking" episodes. (Tr. 254-61). Plaintiff alleged that she primarily socialized over the phone and that she went to her father-in-law and daughter's homes one to two weeks apart. (Tr. 258). Plaintiff reported that she did not like crowds and that she chokes when she is out to dinner. (Tr. 259). When asked how well she handled stress, plaintiff wrote "choke or puke." (Tr. 260).

Dr. Hamad's records also reflect plaintiff's consistent reports of debilitating symptoms supporting an earlier onset date of disability. Plaintiff had been followed by Dr. Hamad for several years beginning in 2006 for her mental health symptoms, and Dr. Hamad had documented plaintiff's symptoms and prescribed medication including SSRIs (selective serotonin reuptake inhibitors), Xanax, Citalopram, and Alprazolam to treat her anxiety and depression. (Tr. 344-400, 426-29, 472-79). The earliest treatment record from Dr. Hamad dates back to June 2006, when plaintiff was seen for follow up of her depression. (Tr. 378). Dr. Hamad reported that plaintiff was continuing to experience anxiety and was having vomiting spells. (*Id.*). When Dr. Hamad saw plaintiff in May 2011 for a yearly evaluation and follow-up of depression and anxiety, he noted she

had needed to increase her Xanax dose and reported that she appeared anxious and gaunt. (Tr. 387). On September 13, 2011, plaintiff told Dr. Hamad she had just lost her job because she had panic attacks when she walked into her workplace and she was unable to perform her job duties due to anxiety. (Tr. 347). Dr. Hamad prescribed medication as needed for globus (the sensation of having a lump in the throat)[4] and choking before trying to eat. (Tr. 349). His treatment notes show that although plaintiff showed some improvement over the summer of 2011, her symptoms precluded her from returning to work in September 2011 and Dr. Hamad referred her for a mental health evaluation at that time. (Tr. 398-400). The records do not show any improvement in plaintiff's symptoms thereafter.

Consistent with Dr. Hamad's reports, consultative examining psychologist Dr. Sexton credited plaintiff's complaints in November 2011 that she was anxious and depressed and that she suffered panic attacks of 20 to 30 minutes' duration occurring on a daily basis with symptoms of sweating, a racing heart, shortness of breath, and frequent periods of tearfulness. (Tr. 409).[5] Plaintiff reported her height and weight as 5'8" and 98 pounds at that time, which appears to be consistent with her complaints of difficulty with eating and vomiting spells. (Tr. 408). Dr. Sexton opined that plaintiff's "complaint of depression and anxiety was consistent with her receiving antidepressant and antianxiety medication," and her self-reported information "appeared to be

---

[4] http://www.medicinenet.com/script/main/art.asp?articlekey=9022

[5] While the ALJ discounted plaintiff's complaints to Dr. Sexton based in part on the high GAF score Dr. Sexton assigned, the ALJ's reasoning in this regard was inconsistent. The ALJ implicitly credited the GAF score which Dr. Sexton assigned the first and only time he saw plaintiff but gave "little weight" to the other GAF scores in the record on grounds that apply equally to the score Dr. Sexton assigned: i.e., the scores varied widely and in several instances "represent[ed] clinicians' initial impressions of the claimant's functioning." (Tr. 72).

reliable." (Tr. 411).[6]

Finally, treating psychologist Dr. Scudder's Mental Status Questionnaire reflects plaintiff's consistent reports of debilitating symptoms after her unsuccessful work attempt. On November 14, 2011, Dr. Scudder reported that plaintiff exhibited symptoms of anxiety and was unable to swallow prescription medication because of a choking sensation. (Tr. 401-03). Dr. Scudder also described "roller coaster thinking," self-confinement, tearfulness, forgetfulness, and a lack of a sense of purpose plaintiff felt since being dismissed from her job. (Tr. 401). On November 28, 2011, Dr. Scudder completed a Daily Activities questionnaire indicating that plaintiff "dislikes crowds" and is "somewhat agoraphobic"; that her high need for rest, poor attendance, and poor stress tolerance may prevent work activities; and that she was fired from Kroger because of panic attacks. (Tr. 404-405).

These treatment records demonstrate that plaintiff consistently complained of debilitating panic attacks and anxiety symptoms beginning well before the ALJ's selected onset date of March 1, 2012. Indeed, contrary to the onset date he found, the ALJ acknowledged that plaintiff's symptoms were debilitating as early as September 2011. (Tr. 71). The ALJ "emphasize[d]" that plaintiff's symptoms associated with what he described as her "increasing panic attacks that would impede her ability to concentrate and persist on a task," such as "racing heart, shortness of breath and high anxiety . . . previously prohibited [plaintiff] from returning to work in 2011." (Tr. 71, citing Tr. 454). Further, the records the ALJ cited in fact demonstrate that plaintiff's symptoms

---

[6] Although the ALJ credited Dr. Sexton's assessment over the opinions of plaintiff's treating providers because the one-time examining psychologist "provided the most detailed examination records from the period before the claimant's established onset date" (Tr. 68), the ALJ failed to fulfill his obligation to consider the regulatory factors, including Dr. Sexton's medical specialty, how well-supported by evidence the opinion was, how consistent the opinion was with the record as a whole, and other factors which tended to support or contradict the opinion, in assessing the weight to give Dr. Sexton's opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

13

were incapacitating prior March 1, 2012.[7] Plaintiff's consistent allegations, including those credited by the ALJ, overwhelmingly support a disability onset date of September 13, 2011.

SSR 83-20 further indicates that medical evidence is of central importance to the disability onset determination. Plaintiff alleges, and the Commissioner implicitly concedes, that the ALJ did not properly weigh the medical opinion evidence in finding that plaintiff's disability did not have its onset until approximately five months later on March 1, 2012. The records and reports from plaintiff's treating psychologist strongly support a September 13, 2011 onset date of disability. On March 12, 2012, Dr. Scudder completed a Medical Assessment of Ability to Do Work-Related Activities (Mental). (Tr. 420-25). He opined that plaintiff has poor functional ability to follow work rules, deal with the public, interact with supervisors, function independently, persist at a work-like task, understand, remember and carry out detailed and complex job instructions, and demonstrate reliability. Dr. Scudder found plaintiff has fair abilities to relate to co-workers, use judgment, and understand, remember and carry out simple instructions. He opined that plaintiff has no ability to deal with work stresses, behave in an emotionally stable manner, or relate predictably in social situations. (Tr. 420-21). In support of his assessment, Dr. Scudder cited medical findings of anxiety, depression, panic attacks, weight loss, disorientation, poor memory, and crying continually. (Tr. 421-22). Dr. Scudder further reported symptoms and findings associated with

---

[7] In assessing plaintiff's complaints of debilitating symptoms prior to March 1, 2012, the ALJ acknowledged that plaintiff had reported vomiting with panic attacks on a daily basis for approximately ten years, but he found the incidents had "recently increased." (Tr. 70, citing Tr. 445, 453). The ALJ relied on two medical records dated June and September 2012 which set forth the history of plaintiff's mental illness and the review of symptoms. Plaintiff described panic attacks with racing heart, shortness of breath and high anxiety during a June 2012 psychological evaluation. (Tr. 445). In a September 26, 2012 diagnostic assessment performed by the Health Resource Center of Cincinnati, Inc., plaintiff reported symptoms of trouble swallowing food for over ten years, throwing up every day, and experiencing panic attacks with shortness of breath, rapid breathing, and headaches. (Tr. 453). She indicated she would like to return to the work place without having choking attacks "all the time." (*Id.*). Plaintiff was described as "very thin for her height due to her *prolonged* issue with choking and throwing up during panic attacks." (*Id.*) (emphasis added). The symptoms described by plaintiff in those records are the same as those reflected in the notes of her primary care physician, Dr. Hamad, and her treating mental health specialist over the course of their treatment with her. The records the ALJ cited do not demonstrate an increase in either the severity or frequency of plaintiff's panic attacks following the expiration of plaintiff's insured status on December 31, 2011.

plaintiff's anxiety disorder that are of listing level severity. (Tr. 424-25). The symptoms and findings in those two reports are consistent with Dr. Scudder's November 2011 report and support an earlier onset date of disability.[8] Notably, the Commissioner has not presented any argument or cited any evidence showing that the ALJ properly weighed the opinions of plaintiff's treating sources and properly credited the opinions of the one-time and non-examining psychologists over those of plaintiff's treating sources in declining to find an onset date of disability prior to March 2012.

Finally, the detailed picture of the nature and course of plaintiff's psychological symptoms provided by her father-in-law, Eugene Meyer, and her daughter, Kristy Meyer, is consistent with plaintiff's report of symptoms and her assertion of an onset date of disability that coincides with her failed work attempt. (Tr. 305-10, 330). The ALJ stated that he was giving these reports of plaintiff's functioning "some weight"; however, he did not find the reports to be inconsistent to any extent with plaintiff's claims or with any other evidence in the record. (Tr. 69). Rather, the ALJ found the reports were credible, stating:

> Because their descriptions of the claimant's impairments and limitations largely comports (sic) with the claimant's own limitations, the undersigned has found them credible (see Hearing Testimony). Additionally, as the only people that the claimant sees on a regular basis, their observations can provide a unique insight into the claimant's impairments and limitations.

(*Id.*).

The third-party reports describe plaintiff's symptoms as growing increasingly severe

---

[8] Although plaintiff submitted additional reports to the Appeals Council from Drs. Scudder and Hammad which further support a finding of an onset of disability in September 2011, the Court does not consider such reports in determining the remedy in this case. Where the Appeals Council denies review, as in this case, it is the ALJ's decision that is considered the final decision of the Commissioner. *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). *See also Smith v. Comm'r of Soc. Sec.*, No. 2:12-cv-12160, 2013 WL 5243448, at *4 (E.D. Mich. Sept. 18, 2013). In conducting its review of the Commissioner's decision, the district court cannot consider evidence that was not presented to the ALJ. *Elliott v. Apfel*, 28 F. App'x 420, 423 (6th Cir. 2002) (citing *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton*, 2 F.3d at 696). This is so even if the Appeals Council considered newly presented evidence in deciding to deny review. *Id.* at 424.

and as having become debilitating by the time she lost her short-lived job with Kroger in September 2011. (Tr. 305-10, 330). Plaintiff's father-in-law wrote that he believed plaintiff began experiencing anxiety attacks after she was terminated from her job with Brown Campbell.[9] (Tr. 305). He wrote that a change was apparent in plaintiff in that she could barely make it through a meal when they went out to eat or when she came to his house to eat. (Tr. 306). He explained that plaintiff would get "choked up and sick to her stomach." (*Id.*). He explained that her symptoms of gasping for air and upset stomach did not improve even though she saw her doctor and tried to get help from a mental health provider, which she had difficulty finding due to a lack of funds. (*Id.*). Mr. Meyer described plaintiff's unsuccessful attempt to return to work at Kroger in the deli department: "On the first day on the job as the pressure of waiting on people became to (sic) much for her she choked up [,] became sick to her stomach [,] gasped for air and spent time in the restroom before she could face anybody." (Tr. 307). The manager told her she was not needed that same day, and her request for any type or work or a position at another store was denied. (*Id.*). Mr. Meyer observed plaintiff become very depressed. (Tr. 308). He explained that if she was in a "pressure situation that bothered her" she suffered breathing problems and an upset stomach. (*Id.*). Mr. Meyer stated that plaintiff might "get choked up and upset" when she visited him. (Tr. 309). Mr. Meyer stated when plaintiff's Kroger job fell through, "she was worse off than before." (Tr. 310). Plaintiff's daughter, Kristy Hunter, wrote in an email dated March 19, 2013, that plaintiff "chokes every time she eats" at home, in restaurants, or on a snack while out in public. (Tr. 330). Ms. Hunter wrote that plaintiff had long suffered from depression and that her main issues were anxiety and panic attacks. She explained that plaintiff gets very anxious when she is out in public in any kind of setting and that plaintiff will inevitably suffer a panic attack if she is "put on the

---

[9] Plaintiff held the job for 19 years before being terminated in June 2006. (Tr. 247).

16

spot." Ms. Hunter explained that when plaintiff experiences a panic attack, she "turns red and very uncomfortable [which] causes her throat to swell even when not eating and she will vomit or dry heave if she has nothing in her stomach." Ms. Hunter indicated that plaintiff's condition had been worsening and that she was "at rock bottom." Ms. Hunter wrote that plaintiff's anxiety kept her from interacting with other customers at the Kroger job in 2011 because she got very nervous or overwhelmed and could not perform her tasks. Ms. Hunter recalled that plaintiff had told her she had to excuse herself at the job to go into the bathroom because her throat had closed up. The third-party reports, which the ALJ fully credited, therefore substantiate plaintiff's claim that she suffered debilitating panic attacks and anxiety symptoms as early as September 13, 2011.

When, as here, impairments are progressive in nature, the Commissioner must "infer the onset date from the medical and other evidence that describes the history and symptomology of the disease process." *Blankenship v. Bowen,* 874 F.2d 1116, 1122 (6th Cir. 1989) (quoting SSR 83-20). In *Blankenship*, the Sixth Circuit recognized that "there is the common sense notion that appellant did not suddenly find himself, five months after the expiration of his coverage, completely incapacitated by his [mental] disorder." 874 F.2d at 1122. Similarly, common sense dictates that plaintiff's mental impairments did not suddenly become completely disabling just two months after her insured status expired. Plaintiff's complaints of panic attacks and anxiety symptoms are well-documented in the record and are corroborated by the medical treatment records. The records show that plaintiff suffered debilitating panic attacks as early as September 13, 2011, the date she made a return visit to her primary care physician, Dr. Hamad, following the deterioration in her condition triggered by a failed attempt to return to work. Notably, "the day the impairment caused the individual to stop work is frequently of great significance" in determining the date of onset. SSR 83-20, 1983 WL 31249, at *2. Plaintiff's consistent allegations, including

17

those credited by the ALJ, overwhelmingly support a disability onset date of September 13, 2011. The overwhelming weight of the medical evidence, plaintiff's subjective complaints as credited by the ALJ, her work history, and the third-party reports are consistent with plaintiff's allegation that her mental disability had its onset in September 2011. The ALJ found that plaintiff met the criteria of Listing 12.06 as of March 1, 2012. The evidence on which the ALJ relied is fully consistent with evidence dating back to September 2011, at which time plaintiff was unable to return to work due to debilitating panic attacks and anxiety symptoms and supports a remand of this matter for an immediate award of benefits.

Moreover, remand for further administrative proceedings would serve no purpose other than additional delay in a case that has been pending for more than 5 1/2 years. Plaintiff first filed her applications for disability benefits in September 2011. (Tr. 204-17). She was afforded an ALJ hearing 18 months later in April 2013. (Tr. 12-54). The ALJ subsequently issued a hearing decision three months later in July 2013. (Tr. 55). Plaintiff requested review of the ALJ's hearing decision in September 2013. (Tr. 7-11). It was not until March 2015, which was 18 months after plaintiff had requested review, that the Appeals Council issued its decision denying plaintiff's request for review. (Tr. 1-6). Plaintiff filed her appeal of the Commissioner's decision in this Court that same month. (Doc. 3). The Commissioner sought two extensions of time to respond to the Statement of Errors. (Docs. 10, 12). Only after seeking and obtaining two extensions of time did the Commissioner file her motion to remand this matter on September 23, 2015. (Doc. 14). By the time the Commissioner filed her "response" to the Statement of Errors on March 1, 2016 (Doc. 18), nearly 5 1/2 years had elapsed from the date plaintiff first filed her applications for disability benefits. Further delay in the resolution of plaintiff's claim for benefits would be unjust. Therefore, this matter should be reversed and remanded for an award of benefits beginning

18

September 13, 2011.

### IT IS THEREFORE RECOMMENDED THAT:

1. Defendant's motion for a voluntary remand (Doc. 14) be **DENIED**.

2. The decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g) for an award of benefits consistent with this opinion.

Date: 6/7/2016

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

AMY J. MEYER,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:15-cv-207
Barrett, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).